IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFREY DEMOND WILLIAMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-04-2945 |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal | § | |
| Justice-Correctional Institutions | § | |
| Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jeffrey Demond Williams seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction and death sentence for capital murder. Respondent Doug Dretke has filed a motion for summary judgment. Having carefully considered the petition, the summary judgment motion, the state court record, the parties' submissions, and the applicable law, this court will grant respondent's motion for summary judgment in part and deny it in part.

## I.  BACKGROUND

The facts of the crime are substantially undisputed. On the night of May 19, 1999, Officer Tony Blando drove around the parking lot of the Roadrunner Inn looking for stolen vehicles. Blando was

in plainclothes and drove an unmarked car.  Blando saw Williams driving a Lexus.  He inquired about the car, and learned that the car was stolen in an aggravated robbery.  As Williams stepped out of the car, Blando approached him with his weapon drawn.  Trial testimony explained that it was departmental practice for officers to draw their weapons when approaching a suspect in a stolen vehicle.  Blando and Williams tussled, and Williams pulled out a gun and fatally shot Blando.  See Williams v. State, No. 73,796 at 2 (Tex. Crim. App. May 8, 2002).

Two witnesses also testified that they saw the shooting.  One was staying at the Roadrunner Inn, and the other at a hotel next door.  One of the witnesses testified that she heard two men arguing in the parking lot.  When she looked out the window, she saw a white man and a black man arguing, and heard the black man telling the white man not to handcuff him.  After the white man got one handcuff on the black man, the black man spun around and shot the white man.  17 Tr. at 75-123.[1]  Williams was arrested near the scene a short while later.  He was wearing one handcuff at the time.  16 Tr. at 95-96.

After his arrest, Houston Police Officer Allen Brown read Williams his Miranda warnings and interviewed him.  Williams acknowledged that he understood his rights and gave two statements

_____

[1]"Tr." refers to the transcript of Williams' trial.

in which he admitted shooting Blando.  17 Tr. at 11-32.  At trial the medical examiner testified that the cause of Blando's death was a perforating gunshot wound to the chest.  18 Tr. at 57.

Police recovered shell casings fired from .380 caliber, .40 caliber, and 9 millimeter weapons.  Blando fired a .380.  17 Tr. at 161-82.  At least some of the other bullets were fired by Williams' gun.  Id. at 202-03.  Williams' fingerprints were on the Lexus and on Blando's Jeep Cherokee.  18 Tr. at 8-11.

The defense presented no witnesses during the guilt-innocence phase.  In his statement to the police, however, Williams contended that he did not know Blando was a police officer, but thought that Blando was trying to rob him, and shot in self-defense.  17 Tr. at 47-59.  One of the officers who responded to Blando's call for help, however, testified that Blando was wearing his badge around his neck.  16 Tr. at 135.  The jury found Williams guilty of capital murder for the murder of Officer Blando.  19 Tr. at 46.

During the penalty phase the State presented the testimony of Jennifer Null, the owner of the stolen Lexus.  On May 10, 1999, nine days before the shooting, the car was stolen from Null at gunpoint.  The thief attempted to force Null into the car, but she refused.  20 Tr. at 5-14.  Officer Allen Brown testified that Williams admitted to committing several robberies and expressed no remorse over the Blando shooting.  Id. at 24-42.  Two witnesses

also identified Williams as the gunman in a robbery-shooting in January of 1999.  The victim of that shooting was Ezzard McCowan. 21 Tr. at 70-136.  The same gun was used in the McCowan and Blando shootings.  Id. at 151-52.  Blando's wife offered victim impact testimony and testified that Blando was a Boy Scout leader.  Id. at 172-78.

Williams' parents testified that he grew up in a stable home and attended church.  Williams showed developmental delays at an early age.  He did not walk until he was 16 months old and did not speak until he was four years old.  He began showing behavioral problems in high school when he broke into lockers, shoplifted, and committed acts of vandalism.  Williams moved to another high school where he underwent psychological testing and was diagnosed as "emotionally disturbed."  He had a verbal IQ of 79, a performance IQ of 65, and a full scale IQ of 70.  His performance score was categorized as being in the mentally retarded range, and his other scores as borderline.  Based on this diagnosis Williams was placed in a special education program.  Williams served in the Navy and received a general discharge under honorable conditions.  After his discharge Williams moved back in with his parents and got a job driving a delivery truck for an auto parts store and as a stocker at Kroger.  Williams moved out of his parents' home in September of 1998 and had no contact with them until he was arrested for

murdering Officer Blando.   22 Tr. at 10-83.   Family friends testified that Williams is a nice person, and they were all shocked to learn that Williams was charged with capital murder.  Id. at 84-119.

The jury found that Williams posed a future danger to commit criminal acts of violence that would constitute a continuing threat to society, and that there was not sufficient mitigating evidence to warrant a life sentence.  23 Tr. at 58.  Accordingly, the trial court sentenced Williams to death.  Id. at 62.

The Texas Court of Criminal Appeals affirmed Williams' conviction and sentence, Williams v. State, No. 73,796 (Tex. Crim. App. May 8. 2002), and denied his application for post-conviction relief, Ex parte Williams, No. 50,662-01 (Tex. Crim. App. Apr. 2, 2003).  On June 17, 2003, Williams filed a successive state habeas application arguing that the Eighth Amendment bars his execution because he is mentally retarded, and that his sentence violates the Sixth Amendment because the jury did not determine that he is not mentally retarded.   The Court of Criminal Appeals found that Williams failed to make a prima facie showing of mental retardation and dismissed the application as an abuse of the writ.  Ex parte Williams, No. 50,662-02 (Tex. Crim. App. Oct. 8, 2003).  Williams filed his federal petition for a writ of habeas corpus on July 20, 2004, and amended the petition on September 1, 2004.  Respondent Dretke now seeks summary judgment.

-5-

## II.  THE APPLICABLE LEGAL STANDARDS

### A.  The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 335-36 (1997).  Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Kitchens v. Johnson, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." See Martin v. Cain, 246 F.3d 471, 475 (5th Cir.), cert. denied, 534 U.S. 885 (2001).  Under the "contrary to" clause this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently

than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" Dowthitt v. Johnson, 230 F.3d 733, 740-41 (5th Cir. 2000), cert. denied, 532 U.S. 915 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." Hoover v. Johnson, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." Neal v. Puckett, 239 F.3d 683, 696 (5th Cir. 2001), aff'd, 286 F.3d 230 (5th Cir. 2002) (en banc), cert. denied sub nom., Neal v. Epps, 537 U.S. 1104 (2003). The solitary inquiry for

a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Id. (quoting Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997)); see also Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.    See 28 U.S.C. § 2254(d)(2); Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000), cert. denied, 532 U.S. 1039 (2001).   The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Jackson v. Anderson, 112 F.3d 823, 824-25 (5th Cir. 1997), cert. denied, 522 U.S. 1119 (1998).

**B.    The Standard for Summary Judgment in Habeas Corpus Cases**

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." Clark v. Johnson, 202 F.3d

760, 764 (5th Cir.), <u>cert. denied</u>, 531 U.S. 831 (2000).  Insofar as they are consistent with established habeas practice and procedure, the Federal Rules of Civil Procedure apply to habeas cases.  <u>See</u> Rule 11 of the Rules Governing Section 2254 Cases.  In ordinary civil cases a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").  When, however, a state prisoner's factual allega-tions have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor.  <u>See</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981).  In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

## III.  <u>ANALYSIS</u>

Williams' amended petition raises numerous claims for relief. These are addressed in turn.

## A.   Mental Retardation

In Williams' first claim for relief he argues that his execution would violate the Eighth Amendment because he is mentally retarded.  In <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002), the Supreme Court held that the Eighth Amendment prohibits the execution of the mentally retarded.  In <u>Bell v. Cockrell</u>, 310 F.3d 330 (5th Cir. 2002), the Fifth Circuit noted "the welter of uncertainty following *Atkins*," and that "inferior federal courts have no useful role to play until and unless following *Atkins*, a death sentence is reaffirmed or again imposed . . . by the state courts." <u>Bell</u>, 330 F.3d at 332-33.  The Fifth Circuit concluded that "the state must be given the first opportunity to apply the Supreme Court's holding in order to insure consistency among state institutions and procedures . . . ."  <u>Id.</u> at 333.

Williams raised this issue in a successive state habeas corpus petition.  The Texas Court of Criminal Appeals dismissed that petition as an abuse of the writ because Williams did not "set[] out sufficient facts to raise a bona fide claim of mental retardation." <u>Ex parte Williams</u>, No. 50,662-02 (Tex. Crim. App. Oct. 8, 2003).  Specifically, the state habeas court found that Williams failed to present a diagnosis of mental retardation before he turned 18 years old or any other evidence from his developmental period showing that he is mentally retarded.  <u>Ex parte Williams</u>, No. 50,662-02, slip op. at 4-5 (Tex. Crim. App. Oct. 8, 2003).  In

-10-

his amended federal petition Williams offers voluminous new evidence that he is mentally retarded. Dretke argues that this new evidence is unexhausted and may not be considered by this court.

The AEDPA requires that a prisoner exhaust his available State remedies before raising a claim in a federal habeas petition.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). As the Fifth Circuit explained in a pre-AEDPA case, "federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. [A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." Orman v. Cain, 228 F.3d 616, 619-20 (5th Cir. 2000); see 28 U.S.C. § 2254(b)(1) (An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ). This rule extends to the evidence establishing the factual allegations themselves. Knox v. Butler, 884 F.2d 849, 852 n.7 (5th Cir. 1989), cert. denied, 494 U.S. 1088 (1990) (citing 28 U.S.C.

§ 2254(b)); see also Jones v. Jones, 163 F.3d 285, 298 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999) (noting that "[s]ubsection (b)(1) [of the AEDPA] is substantially identical to pre-AEDPA § 2254(b)"). However, "as a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented to the state courts." Anderson v. Johnson, 338 F.3d 382, 386-87 (5th Cir. 2003).

Much of Williams' new evidence is inadmissible. Williams offers a discharge summary from his examination at West Oaks Hospital in 1992 (Attachment C) and various documents from the Houston Independent School District concerning Williams' behavior and test scores (Attachment E). These documents are not authenticated. He also offers documents styled affidavits from friends and acquaintances (Attachments O-P, U). These "affidavits" are neither signed nor notarized. Because these documents are inadmissible, they cannot supplement Williams' claim.

Williams also offers several admissible pieces of evidence: (1) Expert affidavits (Attachments H, R, V); and (2) affidavits by Williams' parents, sister, and friends concerning Williams' behavior before and after age 18 (Exhibits I-N, S).[2]  These

---

[2]Dretke correctly notes that Exhibits H-N, R, S, and V are not notarized and therefore do not qualify as affidavits. Each of these documents, however, states that it is signed under penalty of perjury and is therefore admissible as a declaration under 28 U.S.C. § 1746.

documents support Williams' claims of mental retardation as shown by low IQ and deficits in adaptive functioning.  Before considering these documents, however, this court must determine whether they merely supplement, or fundamentally alter, the claims Williams raised in state court.

In his successive state habeas petition Williams plainly indicated that he tested at a full scale IQ of only 70 while still in high school.  He also presented evidence of behavioral and academic problems in high school.  The portion of Williams' new evidence that is admissible does not fundamentally alter the claims Williams raised in state court; rather, the new evidence strengthens the claim of mental retardation laid out in some detail in state court.  See generally Morris v. Dretke, No. 04-70004 (5th Cir. June 16, 2005).

Moreover, the state habeas court's conclusion that Williams failed to plead sufficient facts to make a prima facie case of mental retardation "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The American Association on Mental Retardation ("AAMR") defines mental retardation as (1) sub-average general intellectual functioning; (2) related limitations in two or more of the following adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics,

leisure, and work; and (3) onset before the age of 18.
R. Luckasson, et al., *Mental Retardation: Definition, Classification, and Systems of Supports* (9th ed. 1992).

While the state court was correct in noting that Williams did not present a specific diagnosis of mental retardation before the age of 18, Williams undeniably presented evidence of a full-scale IQ in the mildly retarded range that was so identified by testing before he turned 18, and of significant deficits in adaptive functioning before age 18. The Court of Criminal Appeals' insistence on the incantation of the specific phrase "mentally retarded" in light of substantial evidence that Williams met a clinical definition of mental retardation was simply unreasonable. Therefore, the Court of Criminal Appeals' conclusions on this issue are not entitled to deference under the AEDPA.

On July 16, 2004, this court denied Williams' motion for expert assistance to further develop his <u>Atkins</u> claim. At that time Williams had not yet filed his petition and Dretke had not yet filed the state court records. The July 16, 2004, Order was based solely on the motion papers and the state habeas court's assertion that Williams failed to present any diagnosis of mental retardation before age 18. Review of the state court record now leads this court to conclude that the state habeas court's conclusion was objectively unreasonable. This court also concludes that Williams is entitled to further develop his claim of mental retardation

through an evidentiary hearing. Because Williams presents a colorable constitutional claim for relief, he is entitled to funding for expert assistance. <u>See</u> 28 U.S.C. § 848(q)(9); <u>Hill v. Johnson</u>, 210 F.3d 481, 487 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1039 (2001); <u>Fuller v. Johnson</u>, 114 F.3d 491, 502 (5th Cir.), <u>cert. denied</u>, 522 U.S. 963 (1997). Expert funding will be provided and an evidentiary hearing scheduled on this issue.

**B.    Failure to Provide Competent State Habeas Counsel**

Williams next argues that he was denied his Fourteenth Amendment right to due process of law because the state trial court appointed an attorney with a conflict of interest to represent him on his state habeas corpus petition. A challenge to a State habeas corpus proceeding "is an attack on a proceeding collateral to the detention and not the detention itself." <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir. 1995), <u>cert. denied</u>, 518 U.S. 1022 (1996). Therefore, "infirmities in state habeas proceedings do not constitute grounds for relief in federal court." <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1080 (5th Cir. 1997), <u>cert. denied sub nom.</u>, <u>Monroe v. Johnson</u>, 522 U.S. 1003 (1997). Accordingly, this claim is not cognizable in a federal habeas corpus petition.

**C.    Ineffective Assistance of Counsel**

Williams next argues that he received ineffective assistance of trial counsel when counsel failed to investigate his mental

-15-

health and failed to retain an expert on mental retardation. Williams did not present either of these claims to the state courts. They are therefore unexhausted and procedurally defaulted.

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state forum to present his unexhausted claims. Rose v. Lundy, 455 U.S. 509 (1982). Such a result in this case, however, would be futile because petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law. On habeas review a federal court may not consider a state inmate's claim if the state court based its rejection of that claim on an independent and adequate state ground. Martin v. Maxey, 98 F.3d 844, 847 (5th Cir. 1996). A procedural bar for federal habeas review also occurs if the court to which a petitioner must present his claims to satisfy the exhaustion requirement would now find the unexhausted claims procedurally barred. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a) (Vernon Supp. 2002). The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

(1) the current claims have not been and could not have

been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Id. The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly. Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not claim that he could not have presented the claims in his direct appeal or his state habeas petition because the factual basis for the claims did not exist, or that he is actually innocent. Therefore, petitioner's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts. Coleman, 501 U.S. at 735 n.1. That bar precludes this court from reviewing petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default, or that this court's refusal to review the claim will result in a fundamental miscarriage of justice. Id. at 750.

Williams does not argue that he has cause for his default. A "miscarriage of justice" means actual innocence, either of the crime for which he was convicted, or of the death penalty. Sawyer v. Whitley, 505 U.S. 333, 335 (1992). "Actual innocence of the death penalty" means that, but for a constitutional error, he would not have been legally eligible for a sentence of death. Id.

-17-

To show actual innocence,

> [T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

Kuhlmann v. Wilson, 477 U.S. 436, 455 n.17 (1986).  While Williams would be ineligible for the death penalty if he is mentally retarded, this "actual innocence of the death penalty" does not excuse the procedural default in this instance.  Williams was tried before the Supreme Court decided Atkins.  Therefore, evidence of mental retardation would not have rendered him ineligible for the death penalty at the time of his trial, although it would under current law.  While such evidence may have had mitigating value, it would not have removed him from the class of death-eligible defendants.

Williams' claim of mental retardation is addressed as a free-standing claim for relief.  If this court determines that Williams is mentally retarded, relief will be granted on that basis, rendering this claim redundant.  If this court determines that Williams is not mentally retarded, then counsel's failure to pursue this avenue of defense will not establish actual innocence of the death penalty.  Therefore, this court's refusal to address this claim will not result in a fundamental miscarriage of justice.

-18-

**D.    The "12-10" Rule**

During the penalty phase, the jury was required to answer the following special issue:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Tex. Code Crim. Pro. Art. 37.071 § 2(e)(1).  Under Texas' 12-10 rule, the jury may not answer "no" to this special issue unless all 12 jurors agree, but may answer "yes" if 10 or more jurors agree. Id. at § 2(f).  Williams contends that this rule violates his rights under the Eighth and Fourteenth Amendments.

The state habeas court rejected this argument because Williams failed to comply with the Texas contemporaneous objection rule. SHTr. at 175 ¶ 46;[3] Ex parte Williams, No. 50,662-01.  Accordingly, this claim is procedurally defaulted.  Williams makes no showing of cause for this default.

**E.    Burden of Proof**

Williams next argues that there was no burden of proof required before the jury could find, during the penalty phase, that he committed extraneous offenses, and that the jury was not

---

[3]"SHTr." refers to the transcript of Williams' state habeas corpus proceeding.

required to find the absence of mitigating evidence beyond a reasonable doubt.  Williams argues that this absence of a burden of proof violates his Sixth, Eighth, and Fourteenth Amendment rights under the rules of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002).

Because Williams did not raise these claims in state court, they are procedurally defaulted.  Williams does not argue that cause exists for the default, nor would Williams have been legally ineligible for the death penalty had these issues been raised in state court.  Therefore, this court cannot address these claims for relief.

**F.   Grand Jury Selection**

Williams raises two claims related to the selection and composition of the grand jury that indicted him:  First, he argues that Harris County's method for selecting grand juries systematically under-represents Hispanics; and, second, he argues that his trial counsel was ineffective for failing to object to the grand jury selection process.  Williams did not present either of these claims to the Texas state courts.  They are therefore unexhausted and procedurally defaulted.

Williams argues that his counsel's alleged ineffectiveness constitutes cause for his procedural default.  Ineffective assistance of counsel can constitute cause for a procedural default only if the ineffective assistance of counsel claim is, itself,

exhausted in state court.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000).  Because this ineffective assistance claim is unexhausted, it cannot constitute cause for Williams' procedural default.

**G.   Williams' Statements to the Police**

After his arrest Williams gave five taped statements to the police:  In the first two, he admitted shooting Blando; in the last three he admitted committing three extraneous offenses.  17 Tr. at 22-30; 20 Tr. at 29-41.  Williams alleges that Houston Police Department ("HPD") Sergeant John Swaim made an implied threat that he would use physical violence if Williams did not confess to these crimes.  Williams filed a pretrial motion to suppress the statements.  The trial court conducted a hearing and denied the motion.  2 Tr. at 4-111.

At the hearing HPD Officer Alan Brown testified that he and his partner, Sergeant Swaim, interrogated Williams.  After transporting Williams to the police station, Brown placed Williams in an interview room, removed Williams' handcuffs, and advised Williams of his <u>Miranda</u> rights.  At about 10:45 a.m. Swaim entered the interview room.  Over the course of the next nine and one-half hours Williams gave his five statements.  Brown left the room at about 2:30 p.m. and was out until about 2:50 p.m.  During that time Brown learned that the Lexus Williams was driving that morning was taken in an aggravated robbery.  Brown confronted Williams with

this information, and Williams admitted being the robber.  2 Tr. at 4-56.  The State introduced Williams' confession to the robbery of Jennifer Null's Lexus during the penalty phase.

Williams also testified.  He claims that he asked to call a lawyer, but his request was denied.  Officer Brown repeatedly denied that Williams ever made such a request.  Williams also claimed that he asked Officer Brown to stop the interview.  Brown denied that Williams made any such request.  Id. at 57-109. Williams also testified that Sergeant Swaim told him:  "Back in the days if a mother fucker don't give -- if a mother fucker don't tell us or inform us about what we need to know, we kick their mother- fucker ass."  Williams interpreted this as a threat, and "felt like I was forced to say something that I didn't mean to."  Id. at 72.

Dretke argues that this claim is unexhausted and procedurally defaulted because Williams' state court briefing relied solely on state law.  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (citations and quotations omitted).  However, "[a] prisoner fairly presents a claim to the state court when she asserts the claim 'in terms so particular as to call to mind a specific right protected by the Constitution' or alleges 'a pattern of facts that is well within the mainstream of constitutional litigation.'"  Coleman v. Dretke, 395 F.3d 216, 220 (5th Cir. 2004).  There can be no doubt that a

prisoner's claim that he was coerced into making a statement to police raises federal constitutional issues.  The Texas Court of Criminal Appeals' citation to <u>Arizona v. Fulminante</u>, 499 U.S. 279, 285-86 (1991), in its analysis of this claim, <u>see</u> <u>Williams v. Texas</u>, No. 73,796 slip op. at 9-11, makes clear that the Court of Criminal Appeals understood this claim to raise a federal constitutional issue.  This claim was fairly presented to the state courts as a federal issue and is properly exhausted for purposes of federal habeas corpus review.

In determining whether Williams' statement was admissible, this court must determine whether

> the confession [is] the product of an essentially free
> and unconstrained choice by its maker?  If it is, if he
> has willed to confess, it may be used against him.  If it
> is not, if his will has been overborne and his capacity
> for self-determination critically impaired, the use of
> his confession offends due process.

<u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26 (1973).  Under the AEDPA this court must defer to state court findings of fact unless they are objectively unreasonable.

Williams argues, as he did in his direct appeal, that his testimony that he was threatened by Sergeant Swaim was uncontroverted.  He contends that the state courts were therefore unreasonable in rejecting his claim.  On Williams' direct appeal, however, the Court of Criminal Appeals found that Williams' testimony was controverted by Officer Brown.  Williams argues that Brown admitted leaving the interview room between approximately

-23-

2:30 p.m. and 2:50 p.m., and implies that Swaim made his threat at that time.  In his hearing testimony, however, Williams stated that Swaim made his threat before Williams gave his first statement. 2 Tr. at 71-72.  Williams began his first statement at approximately 11:07 a.m.  Id. at 13.  Therefore, Officer Brown was in the room with Williams and Swaim at the time of Swaim's alleged threat. Implicit in the trial court's denial of Williams' suppression motion is the finding that Brown's testimony that no threats were made was more credible than Williams' testimony.  This court is in no position to disagree with the trial court's credibility determination.  In any event, the Court of Criminal Appeals' conclusion that Williams' statement was not coerced by Swaim's alleged threat is not unreasonable based on the record.  This conclusion is therefore entitled to deference.

## H.   Ineffective Assistance of Counsel

In his final claim Williams argues that his trial counsel was ineffective for inadequately investigating the extraneous offense of the shooting of Ezzard McCowan.  Williams did not raise this issue in state court.  The claim is therefore procedurally defaulted.

Williams contends that this court's refusal to review this claim will result in a fundamental miscarriage of justice.  It is not true, however, that Williams would have been legally ineligible for the death penalty if his counsel investigated this issue.  This

claim does not fall within the miscarriage of justice exception to the procedural default rule, and this court may not review the claim.

### IV.  ORDER

1.   Respondent Doug Dretke's Motion for Summary Judgment (Document Entry No. 26) is **GRANTED IN PART**, and Williams' Petition is **DISMISSED** with the exception of his claim that he is mentally retarded.  As to that claim, the Motion for Summary Judgment is **DENIED**.

2.   An evidentiary hearing will be held on August 29, 2005, at 1:00 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas, regarding Williams' claim of mental retardation.

**SIGNED** at Houston, Texas, on this 15th day of July, 2005.

_____
                    SIM LAKE
          UNITED STATES DISTRICT JUDGE